UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO ZARAZUA,<br><br>                     Petitioner,<br><br>       vs.<br><br>RALPH DIAZ,<br><br>                     Respondent. | No. 2:12-cv-1500-JAM-EFB P<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner proceeding without counsel on a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges a judgment of conviction entered against him on January 31, 2009, in the Sacramento County Superior Court on charges of shooting at an occupied vehicle for the benefit of a criminal street gang. He seeks federal habeas relief on the grounds that: (1) the sentencing court violated his right to due process in failing to exercise its discretion under state law to strike the gang enhancement or reduce his conviction for shooting at an occupied vehicle from a felony to a misdemeanor; and (2) his trial counsel rendered ineffective assistance in failing to fully apprise the trial court of its sentencing options. Upon careful consideration of the record and the applicable law, it is recommended that the petition for habeas corpus relief be denied.

/////

/////

**I. Procedural Background**

After a jury trial, petitioner was convicted of second degree murder, attempted voluntary manslaughter, and shooting at an occupied vehicle, with a sentence enhancement for acting for the benefit of a criminal street gang. He was sentenced to 22 years 8 months plus 40 years to life in state prison. *People v. Zarazua*, 162 Cal.App.4th 1348 (2008). He appealed his conviction to the California Court of Appeal, Third Appellate District. *Id.* In a partially published opinion, the Court of Appeal reversed the second degree murder and attempted voluntary manslaughter convictions because of jury instruction error but affirmed his conviction for shooting at an occupied vehicle and the gang enhancement. *Id.* On remand, the district attorney elected not to retry petitioner on the second degree murder and attempted voluntary manslaughter counts. ECF No. 1 at 92-93. Petitioner was resentenced to 40 years to life for shooting at an occupied vehicle for the benefit of a criminal street gang. *Id.* at 93.

On March 15, 2010, petitioner filed a second appeal in the California Court of Appeal, in which he challenged his sentence after remand. The Court of Appeal denied this appeal in a reasoned decision on the merits of petitioner's claims. *Id.* at 92-103. Petitioner subsequently filed a petition for review in the California Supreme Court, which was summarily denied on April 20, 2011. Resp't's Lodg. Doc. 4.

**II. Factual Background**

In its decision on petitioner's first appeal, the California Court of Appeal for the Third Appellate District provided the following summary of the facts surrounding petitioner's crimes of conviction:

> Emilio Osorio and Julio Covington, cousins and members of the Norteños gang, went to the AM/PM on the corner of Jessie Avenue and Norwood Avenue in Sacramento in the red Pontiac Firebird that Covington was driving. Neither of them was armed. Covington parked in front of the store and went into the store while Osorio waited in the car.
>
> Inside the store, Covington saw Sergio, whom he recognized as a Sureño, based on his clothing. He was wearing a shirt with the number 13 on it. Covington left the store and drove the Pontiac over by the gasoline pumps. Carlos was standing near one of the pumps, next to a blue Toyota. Covington yelled "Norte" at Carlos, which, to a rival gang member, is a challenge. Covington also

2

called Carlos a "scrapa," a name a Norteños gang member calls a Sureños gang member, intended as an insult. In response, Carlos yelled, "Fuck you." Angry, Covington pulled out of the station and onto Jessie Avenue. He drove slowly through the neighborhood looking for someone he knew.

Covington stopped at a stop sign on Naruth Way at the intersection with Jessie Avenue, less than a half-mile from the AM/PM and about a block from Rio Linda Boulevard. The Toyota from the AM/PM, with Carlos driving and Sergio and Jorge as passengers, left the AM/PM and, traveling on Jessie Avenue, approached the intersection of Naruth Way and Jessie Avenue just after the Pontiac, traveling on Naruth Way, arrived at the same intersection. The Toyota skidded to a stop about 40 feet away from the Pontiac. Sergio and Jorge each leaned out of the Toyota and fired handguns at the Pontiac.

Reacting to the gunshots, Covington told Osorio to get down and first accidentally put the Pontiac in neutral but then into drive. He burned rubber, then drove away from the Toyota down Jessie Avenue, gaining speed rapidly, and, despite a stop sign, entered Rio Linda Boulevard going about 45 miles per hour. At the same time, a Honda Accord driven by Khamla Douangmala was passing through the same intersection on Rio Linda Boulevard, going about 35 miles per hour. Douangmala's uncle, Chan Douangdara, was riding in the front passenger seat, and Douangmala's three-year-old son, Rocky, was riding in the backseat on the passenger side.

The Pontiac hit the Honda, propelling it into some poles. Douangmala and his uncle were both knocked unconscious but later recovered. Rocky, however, died as a result of the impact.

Lynn Reed had been waiting at the stop sign when the Pontiac passed him and collided with the Honda. Reed was driving a sport utility vehicle and pulling a boat. After the collision, Covington and Osorio left the Pontiac and ran toward Reed, who had pulled over onto Rio Linda Boulevard. Osorio jumped into the boat. Covington attempted to force his way into Reed's vehicle through the driver's door and clung to the vehicle, expressing fear that someone was shooting at him. After Reed drove slowly down Rio Linda Boulevard, about a block, Covington and Osorio jumped off and fled the scene.

Sacramento Police Department investigators found a .25 caliber automatic shell casing at the corner of Jessie Avenue and Naruth Way. The red Pontiac had a bullet hole in the right rear quarter panel and another through the rear tail lamp. Other holes were caused either by bullets or by a dent puller, a tool used to repair dents in a car.

/////

/////

/////

3

> About one month after the incident, police searched a residence occupied by Carlos and Sergio and their parents. The blue Toyota was parked in front of the residence. The officers found indicia of gang membership relating to both Carlos and Sergio.
>
> Each of the defendants was interviewed by police.[1]
>
> Carlos, 19 years old at the time, recounted Covington's challenge to him at the AM/PM station and their pursuit of the Pontiac. Both Sergio and Jorge had handguns, Jorge's a .25-millimeter, and fired at the Pontiac.
>
> Jorge, 16 years old at the time, stated that, while he and Sergio were in the AM/PM store, they realized that someone was talking to Carlos, out by the gasoline pumps. They hurried out and joined Carlos in the Toyota to chase the Pontiac. Jorge claimed that the passenger in the Pontiac pointed a gun at them and that Sergio was the only one who fired. He admitted associating with Sureños gang members. Later, he admitted that he fired one round at the Pontiac. Sergio, 15 years old at the time, stated that he and Jorge were Sureños gang members, but Carlos was not. He claimed that the occupants of the other car were shooting into the air, but he later retracted that statement and claimed he said it because Jorge had told him to. Both Sergio and Jorge fired at the Pontiac.

*Zarazua*, 162 Cal.App.4th at 1352-53.

**III. Standards of Review Applicable to Habeas Corpus Claims**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

/////

/////

---

[1] As discussed below, two juries tried the three defendants. Only the jury considering Carlos's guilt heard the recording of Carlos's interview. And only the jury considering the guilt of Sergio and Jorge heard the recordings of their interviews.

>An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S. ___, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. *Id.* Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Lockyer v.*

5

1    *Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002

2    (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that

3    court concludes in its independent judgment that the relevant state-court decision applied clearly

4    established federal law erroneously or incorrectly. Rather, that application must also be

5    unreasonable." *Williams*, 529 U.S. at 412. *See also Schriro v. Landrigan*, 550 U.S. 465, 473

6    (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

7    review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

8    "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

9    'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v.*

10   *Richter*, 562 U.S.___,___,131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S.

11   652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal

12   court, a state prisoner must show that the state court's ruling on the claim being presented in

13   federal court was so lacking in justification that there was an error well understood and

14   comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*,131

15   S. Ct. at 786-87.

16   If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

17   court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*,

18   527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

19   (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

20   2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering

21   de novo the constitutional issues raised.").

22   The court looks to the last reasoned state court decision as the basis for the state court

23   judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If

24   the last reasoned state court decision adopts or substantially incorporates the reasoning from a

25   previous state court decision, this court may consider both decisions to ascertain the reasoning of

26   the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When

27   a federal claim has been presented to a state court and the state court has denied relief, it may be

28   presumed that the state court adjudicated the claim on the merits in the absence of any indication

6

or state-law procedural principles to the contrary." *Richter*, 131 S. Ct. at 784-85. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, ___ U.S. ___, ___, 133 S.Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 786. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 131 S. Ct. at 784).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

/////

habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

**IV. Petitioner's Claims**

In his petition for review filed in the California Supreme Court, petitioner argued that the sentencing court had the discretion to strike the gang enhancement and to reduce his sentence for shooting at an occupied vehicle from a felony to a misdemeanor based on numerous mitigating factors. Resp't's Lodg. Doc. 3 at 8-10. He further argued that the sentencing judge failed to reduce his sentence because he mistakenly believed he lacked the discretion to do so. *Id.* at 10-13. In addition to contending that this error violated state law, petitioner argued that "a court's misunderstanding of the legal rules pertaining to sentencing discretion implicates due process rights under the Fifth and Fourteenth Amendments to the United States Constitution." *Id.* at 11-12 (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973)). Citing *Hicks v. Oklahoma*, 447 U.S. 343 (1980), petitioner further argued that the Due Process Clause entitled him to the correct application of state laws governing criminal proceedings.

In his first claim contained in the petition before this court, petitioner argues that the sentencing court "failed to follow sentencing law(s) when imposing sentence on Petitioner, Mitigating factors outweighed any existing possible aggravating factors." ECF No. 1 at 5. He argues that state court judges are allowed, "if not also required . . . by law," to consider mitigating circumstances prior to sentencing a criminal defendant and that the sentencing court failed to do so in this case when imposing his sentence after remand. *Id.* at 17-18. He alleges that "under the Due Process Clause when the state ignores and/or completely disregards state law, and the prisoner/petitioner can show that he has a liberty interest in the fair and impartial application of said state law in dispute, federal habeas corpus relief may be granted." *Id.* at 18 (citing *Hicks*, 477 U.S. at 343.) Petitioner also argues that the sentencing court disregarded its obligation to consider mitigating factors and to give him "individualized treatment" when imposing his sentence. *Id.* at 22. Petitioner discusses at length mitigating factors that should have been considered by the trial court in reducing his sentence, including his lack of a prior record at the time of his arrest, his age at the time of his arrest, and his post-incarceration conduct. *Id.* at 23-

8

1   26. He argues that if the sentencing court had properly weighed these factors, it would have

2   sentenced him to less than a life term. *Id.* at 31.

3   In his second claim contained in the petition before this court, petitioner argues that his

4   trial counsel rendered ineffective assistance in failing to advise the sentencing court that it had

5   discretion when sentencing petitioner and that it should exercise that discretion to strike or

6   dismiss the gang enhancement, reduce his conviction for shooting at an occupied vehicle to a

7   misdemeanor, and impose a lesser sentence. *Id.* at 32-36. Petitioner claims that his counsel was

8   under an obligation to have knowledge of the trial court's sentencing choices and to ensure that

9   the sentencing judge was aware of alternative sentences. *Id.* at 32-33. He argues, "it would

10  appear by certain statements made by the sentencing court, that it is reasonable to believe that the

11  court did not think that it had the discretion to impose a lesser/reduced sentence, so the assistance

12  of counsel to guide and/or assist the court in rendering a just sentencing choice . . . was even more

13  important to petitioner." *Id.* at 35. Petitioner summarizes his claims before this court as follows:

14  "he suffered federal constitutional error when the sentencing court failed to apply existing law to

15  provide a sentence less than life based on the mitigating factors in Petitioner's case, and trial

16  counsel was ineffective for failing to brief the sentencing court on its discretion to provide a

17  sentence less than life when it was clear, based on Petitioner's personal characteristics, that he

18  was entitled to such a mitigated sentence." ECF No. 29 at 24.

19  The California Court of Appeal rejected these arguments in its decision upholding

20  petitioner's sentence after remand. The court reasoned as follows:

> Sergio urges us to reverse the judgment because the trial court misunderstood the scope of its sentencing discretion. He argues that the trial court may well have decided to strike the penalty imposed by section 186.22, subdivision (b)(4), and to reduce the conviction of section 246 to a misdemeanor if the court had been aware of its sentencing choices. We disagree.
>
> **A**
>
> In pronouncing judgment, the trial court acknowledged impassioned pleas for leniency by Sergio and Jorge as follows: "And, yes, Sergio, and yes, Jorge, I recognize your letter that plead for lienency [sic], and I recognize that you are changed, dramatically changed individuals.

> "And, yes, I understand that you believe I am sentencing you or that the law is treating you or judging you for being a 15 year old that was immature, that acted horofically [sic], that you probably would never do [it] again, and it's true, that is what you're being punished for.
>
> "And I know in your letters and in your hearts that you accept responsibility for that ignorant behavior that you have said yourselves was ignorant and horrible.
>
> "But this Court is in no position, irrespective of what I may personally feel, to say: Oh, [counsel for defendant] is right. Oh, no, [counsel for Jorge] is right about guns or, no, I think the district attorney is doing the wrong thing.
>
> "This Court is bound and obligated to impose sentence as the law mandates, and indeed, will impose sentence in the following manner:
>
> "With respect to both defendants, Madam Clerk, they will be sentenced to Count 4, the discharging of the firearm into an occupied vehicle as mandated by law in light of the finding that the discharge of said firearm was for the benefit of, direction of, or in association with a criminal street gang within the meaning of Penal Code Section 186.22(b) for an indeterminate term of 15 years to life."

The trial court then noted: "They would not have been . . . granted probation even if they were [eligible] in light of the seriousness of the conduct and the seriousness of the circumstances surrounding the crime."

The court further sentenced defendant and Jorge as follows: "And following the jury's finding that they personally, each of them, discharged, and by the discharge of a firearm caused great bodily injury and/or death within the meaning of Penal Code sections 12022.53(b), (c), (d) and subsections (e), which subsection (e), causes the 15 to life sentence to begin with, your sentences will be enhanced by 25 additional years to life as mandated by the legislature, for an aggregate term, indeterminate term, of 40 years to life, each Defendant to suffer said aggregate imposition of 40 years to life."

**B**

Defendant argues that the trial court could have lawfully selected a lesser sentence than the 40-years-to-life term imposed. Specifically, defendant contends that a trail court has discretion to strike the gang enhancement provided by section 186.22, subdivision (b)(4). In support, defendant relies on *People v. Torres* (2008) 163 Cal.App.4th 1420 (*Torres*). In *Torres*, the Court of Appeal reversed after the trial court resentenced defendant to a term greater than the initial sentence. (*Id.* at pp. 1432-1433.) The *Torres* court remanded the case with instructions to strike the gang enhancements if it found the case presented unusual circumstances.

10

(*Id.* at p. 1433.) "In striking an enhancement in '"furtherance of justice"' the court 'may look to general principles, outside the framework of the sentencing scheme, or be guided, instead, by the particulars of the scheme itself, informed as well by "generally applicable sentencing principles relating to matters such as the defendant's background, character, and prospects," including the factors found in California Rules of Court, rule 410 [now rule 4.410] et. seq.' (*People v. McGlothin* (1998) 67 Cal.App.4th 468, 474[ ]; see *People v. Williams* (1998) 17 Cal.4th 148, 160[ ].)" (*Id.* at p. 1433, fn. 6.)

Defendant also notes that section 246[2] is an offense that can be punished as a felony or misdemeanor. "If a given statute . . . does not define the nature of the crime as either a felony or a misdemeanor, but merely specifies a punishment, the test of the nature or status of the offense, which only applies to this special class of felony-misdemeanor offenses or so-called wobblers, becomes the actual punishment imposed." (*People v. Superior Court (Perez)* (1995) 38 Cal.App.4th 347, 355.) Accordingly, defendant contends the trial court could have reduced the conviction of section 246 to a misdemeanor under section 17.[3]

The Attorney General argues that defendant forfeited these issues because his trial attorney failed to raise the issue in the trial court. To this end, respondent points out that this court ordinarily will not consider erroneous rulings when an objection could have been, but was not, presented to the trial court. (*People v. Saunders* (1993) 5 Cal.4th 580, 589-590.) Moreover, respondent points out that a defendant's failure to invite the court to exercise its discretion to dismiss a sentence enhancement forfeits the right to raise the issue on appeal. (*People v. Carmony* (2004) 33 Cal.4th 367, 376.) We agree that defendant forfeited his challenge to the trial court's failure to exercise its discretion to select a lesser sentence by striking the gang enhancement and reducing the section 246 conviction to a misdemeanor.

Anticipating our conclusion that the issue has been forfeited, defendant contends he received ineffective assistance of counsel for failure of his trial attorney to argue for striking the enhancement and reducing the section 246 conviction to a misdemeanor.

---

[2] Section 246 provides: "Any person who shall maliciously and willfully discharge a firearm at an inhabited dwelling house, occupied building, occupied motor vehicle, occupied aircraft, inhabited housecar, as defined in Section 362 of the Vehicle Code, or inhabited camper, as defined in Section 243 of the Vehicle Code, is guilty of a felony, and upon conviction shall be punished by imprisonment in the state prison for three, five, or seven years, or by imprisonment in the county jail for a term of not less than six months and not exceeding one year."

[3] Subdivision (b) of section 17 provides, in pertinent part: "When a crime is punishable, in the discretion of the court, by imprisonment in the state prison or by fine or imprisonment in the county jail, it is a misdemeanor for all purposes under the following circumstances: [¶] (1) After a judgment imposing a punishment other than imprisonment in the state prison."

11

> Although we consider the issue in the context of defendant's alternate claim of ineffective assistance of counsel, we shall conclude that he did not receive deficient legal representation.
>
> A defendant claiming ineffective assistance of counsel must prove that counsel's performance was deficient under an objective standard of professional conduct and there is a reasonable probability that but for counsel's deficiencies the defendant would have achieved a more favorable result at trial. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688 []; *People v. Holt* (1997) 15 Cal.4th 619, 703.)  We conclude he would not have received a more favorable result even if trial counsel had performed as he now wishes.
>
> On appeal, we presume that the trial court properly exercised its discretion in sentencing a criminal defendant. (*See, e.g., Ross v.. Superior Court* (1977) 19 Cal.3d 899, 913.)  Thus, we may not assume the court was unaware of its discretion simply because it failed to explicitly refer to its alternate sentencing choices. (*People v. Fuhrman* (1997) 16 Cal.4th 930, 933, 944-947.)
>
> We reject defendant's contention that the court's remark demonstrates it did not believe it did have discretion to select a lesser sentence.  The court's remarks about imposing the sentence required by law were made in the context of an acknowledgement that Sergio and Jorge had expressed genuine remorse for their part in causing the senseless death of a three-year-old child.  The court indicated that personal feelings about the case did not determine the punishment, but rather that the sentence was set forth by law.
>
> The court's statement about following the law in sentencing Sergio and Jorge did not indicate legal impediment to selecting lesser sentences.  To the contrary, the trial court pointedly noted "the seriousness of the conduct and the seriousness of the circumstances surrounding the crime" when stating that probation would not have been granted even if it had been an option.  The "ignorant and horrible" nature of the conduct leading to the death of a three-year-old child served as the trial court's basis for selecting Sergio's sentence.
>
> As the court's comments make clear, the court would not have imposed a lesser sentence even if trial counsel had argued for striking the gang enhancement and reducing the section 246 conviction to a misdemeanor.  Consequently, defendant did not receive ineffective assistance of counsel at sentencing.

ECF No. 1 at 95-101.

As set forth above, the California Court of Appeal concluded that petitioner forfeited his due process claim by failing to make a contemporaneous objection to the sentencing court's alleged failure to exercise its discretion to consider mitigating factors for the purpose of reducing petitioner's sentence. Respondent argues that the state court's finding of waiver constitutes a

12

state procedural bar precluding this court from addressing the merits of that claim. ECF No. 27 at 16-26.

State courts may decline to review a claim based on a procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977). As a general rule, a federal habeas court "'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Calderon v. United States District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). The state rule is only "adequate" if it is "firmly established and regularly followed." *Id.* (quoting *Ford v. Georgia*, 498 U.S. 411, 424 (1991)); *Bennett v. Mueller*, 322 F 3d 573, 583 (9th Cir. 2003) ("[t]o be deemed adequate, the state law ground for decision must be well-established and consistently applied."). The state rule must also be "independent" in that it is not "interwoven with the federal law." *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000) (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983)). Even if the state rule is independent and adequate, the claims may be heard if the petitioner can show: (1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or (2) that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749-50.

Respondent has met his burden of adequately pleading an independent and adequate state procedural ground as an affirmative defense. *See Bennett*, 322 F.3d at 586. Petitioner does not deny that his trial counsel did not raise a contemporaneous objection to the sentencing court's alleged failure to exercise its discretion when imposing petitioner's sentence. Although the state appellate court addressed petitioner's due process claim on the merits, it also expressly held that the claim was waived on appeal because of defense counsel's failure to object. Petitioner has failed to meet his burden of asserting specific factual allegations that demonstrate the inadequacy of California's contemporaneous-objection rule as unclear, inconsistently applied or not well-established, either as a general rule or as applied to him. *Bennet,* 322 F.3d at 586; *Melendez v. Pliler*, 288 F.3d 1120, 1124-26 (9th Cir. 2002). Petitioner's claim therefore appears to be
/////

procedurally barred. *See Coleman*, 501 U.S. at 747; *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004).

Petitioner has also failed to demonstrate that there was cause for his procedural default or that a miscarriage of justice would result absent review of the claim by this court. *See Coleman*, 501 U.S. at 748; *Vansickel v. White*, 166 F.3d 953, 957-58 (9th Cir. 1999). Ineffective assistance of counsel will establish cause to excuse a procedural default if it was "so ineffective as to violate the Federal Constitution." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Murray v. Carrier*, 477 U.S. 478, 486–88 (1986)). For the reasons explained below, the failure of petitioner's trial counsel to object to the imposition of petitioner's sentence does not rise to the level of a constitutional violation.

Even if petitioner's due process claim is not procedurally barred, it should be denied. As explained above, "it is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Wilson v. Corcoran*, 562 U.S. ___, ___, 131 S. Ct. 13, 16 (2010) (quoting *Estelle*, 502 U.S. at 67). So long as a sentence imposed by a state court "is not based on any proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigency, the penalties for violation of state statutes are matters of state concern." *Makal v. State of Arizona*, 544 F.2d 1030, 1035 (9th Cir. 1976). "Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief." *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994). Thus, whether or not the sentencing judge abused his discretion under state law when he failed to mitigate petitioner's sentence is not at issue in this federal habeas corpus proceeding.

On federal habeas review, the question "is not whether the state sentencer committed state-law error," but whether the sentence imposed on the petitioner is "so arbitrary or capricious" as to constitute an independent due process violation. *Richmond v. Lewis*, 506 U.S. 40, 50 (1992). *See also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980); *Laboa v. Calderon*, 224 F.3d 972, 979 (2000); *Fetterly v. Paskett*, 997 F.2d 1295, 1300 (9th Cir. 1993) ("the failure of a state to abide by its own statutory commands may implicate a liberty interest protected by the Fourteenth Amendment against arbitrary deprivation

by a state"). However, "federal courts are extraordinarily chary of entertaining habeas corpus violations premised upon asserted deviations from state procedural rules." *Hernandez v. Ylst*, 930 F.2d 714, 719 (9th Cir. 1991).

Here, in the absence of any evidence to the contrary, the California Court of Appeal presumed that the trial judge was aware of his sentencing discretion and properly exercised that discretion in determining petitioner's sentence. This conclusion by the Court of Appeal is consistent with the transcript of the sentencing proceedings. Although the judge did not discuss the possibility of striking the gang enhancement or reducing petitioner's conviction to a misdemeanor, there is no indication in the record that he did not understand his discretion to do so. In the absence of any remarks by the trial judge or counsel about any alternate sentencing choices, there is no evidence that the trial judge did not recognize his options. Specifically, there is no evidence in the record that the sentencing judge did not understand he could consider mitigating factors, strike the gang enhancement, or reduce petitioner's conviction for shooting at an occupied vehicle to a misdemeanor.

The few comments the judge did make about the exercise of discretion were not concerned with his discretion to reduce or strike any part of petitioner's conviction, but were made in the context of his lack of options in sentencing petitioner on his felony conviction for shooting at an occupied vehicle for the benefit of a criminal street gang. As such, these comments have no bearing on the claim before this court. The record also reflects that the sentencing judge was not disposed to reduce petitioner's sentence. He made several references to the "horrible," "ignorant," and "immature" nature of petitioner's actions and the seriousness of the crime. In light of these remarks, is it highly unlikely the sentencing judge would have exercised his discretion to reduce petitioner's sentence or strike the gang enhancement, notwithstanding the existence of several mitigating factors. In short, under the circumstances presented here, and based on the record before this court, it does not appear the sentencing court applied state sentencing laws in an arbitrary or capricious manner or that petitioner's sentence is based on any proscribed federal grounds. Accordingly, petitioner is not entitled to relief on his due process claim.

Petitioner also claims that his trial counsel rendered ineffective assistance in failing to apprise the sentencing judge of his discretion to reduce petitioner's felony conviction to a misdemeanor and/or to strike the gang enhancement. The clearly established federal law for ineffective assistance of counsel claims is *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on a *Strickland* claim, a defendant must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." *Id.* at 687. Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." *Id.* at 687–88 (internal quotation marks omitted). Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S.Ct. at 792.

The California Court of Appeal determined that petitioner failed to show prejudice with respect to his claim of ineffective assistance of counsel because the sentencing judge's comments made clear that he "would not have imposed a lesser sentence even if trial counsel had argued for striking the gang enhancement and reducing the section 246 conviction to a misdemeanor." This court agrees. As noted above, in imposing sentence on petitioner the sentencing judge specifically mentioned the seriousness of petitioner's conduct and the "horrible" circumstances surrounding the crime. It is highly unlikely the judge would have reduced petitioner's conviction to a misdemeanor or stricken the gang enhancement, even if petitioner's trial counsel had reminded the judge of his option to do so.

The decision of the California Court of Appeal rejecting petitioner's due process and ineffective assistance of counsel claims is not contrary to or an unreasonable application of United States Supreme Court authority, nor is it based on an unreasonable determination of the facts of this case.

/////

/////

/////

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: June 23, 2015.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE